IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J.K., a minor, by his parent and next friend,
███████,

and

███████,

Plaintiffs,

v.

DR. MARK T. BEDELL (officially as),
Superintendent,
Anne Arundel County Public Schools,
2644 Riva Road,
Annapolis, MD 21401,

and

ANNE ARUNDEL COUNTY BOARD OF
EDUCATION,
2644 Riva Road,
Annapolis, MD 21401,

Defendants.

Civil Action No. _____

# COMPLAINT

## Preliminary Statement

1. This is an action brought by ███████ ("the parent"), in her own right and on behalf of her son, J.K., alleging that Anne Arundel County Public Schools ("AACPS" or "school system"), failed to provide J.K. with the free appropriate public education ("FAPE"), to which he is entitled under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20

1

U.S.C. §§1400 *et seq*. In addition, the Administrative Law Judge ("ALJ"), in this action greatly compounded the violation when he determined that the Individualized Education Program ("IEP"), and placement proposed by AACPS for J.K. for the 2024-2025 school year were appropriate. In so concluding, the ALJ improperly deferred to the school system's witnesses and overlooked critical concerns expressed by plaintiffs and their expert witnesses about the AACPS proposals. The ALJ also erroneously overlooked clear predetermination of the proposed placement before the actual IEP meeting that was not even discovered by the parent until the middle of the due process hearing. Accordingly, the ALJ denied the parent her requested relief of funding and placement at Harbour School for the 2024-25 school year. For a multitude of reasons, the Court should correct these errors and reverse the ALJ's Decision, thereby awarding plaintiffs their long-overdue relief.

## Jurisdiction

2. This Court has jurisdiction pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*.; the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; 42 U.S.C. § 1983 ("Section 1983"); and 28 U.S.C. §§ 1331 and 1343. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202. This Court has pendent jurisdiction pursuant to MD. CODE ANN. EDUC. § 8-413.

3. Plaintiffs have exhausted their administrative remedies and appeal from a Decision of an Administrative Law Judge of the Maryland Office of Administrative Hearings, MSDE-AARU-OT-24-14239 (October 31, 2024).

## Parties

4. J.K. is a fifteen-year-old, educationally disabled student who at all times relevant to this action resided in Anne Arundel County, Maryland. His mother, ▮▮▮▮▮▮▮▮, brings this action on J.K.'s behalf and in her own right.

5. Dr. Mark T. Bedell is the Superintendent of the Anne Arundel County Public Schools, and as such, is the public official charged with the responsibility for ensuring that AACPS complies with federal law as to the education of disabled children. He is sued in his official capacity.

6. The Anne Arundel County Board of Education receives financial assistance from the United States Department of Education. Accordingly, the Anne Arundel County Board of Education is responsible for complying with federal law with respect to the provision of a FAPE to each disabled child in Anne Arundel County.

## FACTUAL ALLEGATIONS

7. J.K. is a fifteen-year-old student who has been diagnosed with a Moderate Intellectual Disability.

8. J.K. has been found eligible for special education services by AACPS as a student with Multiple Disabilities, including an Intellectual Disability and an Other Health Impairment.

9. J.K. was initially evaluated by the D.C. Early Stages program due to parental concerns related to his speech development.

10. J.K. attended Shepard Elementary, a District of Columbia Public School, for Pre-Kindergarten.

11. In 2016, J.K.'s mother raised concerns about his academic progress prompting a psychological evaluation. The evaluation revealed that J.K. had a Specific Learning Disability, and he was found eligible for special education services.

12. J.K. continued to attend D.C. Public Schools until his mother placed him at the Auburn School in January 2017. The Auburn School is a private school for children who have challenges with executive functioning, attention, and socialization/social communication.

13. In October 2017, J.K. underwent a Neuropsychological Evaluation with Dr. Joette James.

14. Dr. James administered the Wechsler Intelligence Scale for Children, Fifth Edition ("WISC-V"), which indicated that J.K.'s cognitive abilities were in the Extremely Low range (FSIQ-50, <0.1 percentile). His verbal reasoning skills, visual-spatial and nonverbal/fluid reasoning abilities were all in the Extremely Low range.

15. Dr. James also assessed J.K.'s attention and executive functioning, and administered the Behavior Rating Inventory of Executive Function 2 ("BRIEF-2"), and the Behavior Assessment System for Children, Second Edition ("BASC-2"), where his scores fell in the "At Risk" and "Clinically Significant" ranges.

16. J.K.'s academic skills were assessed by Dr. James using the Wechsler Individual Achievement Test, Third Edition, ("WIAT-III"). His reading skills fell in the mid to late Pre-Kindergarten level (0.1 percentile). His arithmetic skills fell within the Low range for his age.

17. Dr. James concluded that J.K. met the criteria for the diagnosis of an Intellectual Disability.

18. Given J.K.'s significant developmental delays in multiple domains, his lack of academic progress, seizure disorder, and need for special education services, Dr. James recommended a full-time non-public placement with a small class size, low student to-teacher ratio, specialized academic instruction with Speech and Language and Occupational Therapy services.

19. Based on Dr. James's evaluation, D.C. Public Schools recommended that J.K. attend The Kennedy School, a nonpublic day school for children with Autism, Intellectual

Disabilities, Emotional Disabilities, and Learning Disabilities. However, the program was not appropriate for J.K.

20. J.K. next transferred to the Phillips School and attended there until he moved with his family to Anne Arundel County, Maryland.

21. In September 2020, AACPS convened an IEP meeting and determined that it could not serve J.K. in the public school setting. The school team determined that due to J.K.'s needs and the number of hours in his IEP, it was appropriate for him to continue to attend a nonpublic special education school. His mother requested that the school system fund him at the Harbour School, which the school system agreed to.

22. J.K. began attending Harbour in the fall of 2020 and immediately began making progress both academically and socially.

23. On August 17, 2022, J.K. underwent a Neuropsychological Evaluation with Dr. Yuri Shishido. The evaluator's findings were consistent with Dr. James's findings in 2017.

24. Dr. Shishido determined that J.K.'s current coding of Multiple Disabilities, including an Intellectual Disability and Other Health Impairment continued to be appropriate.

25. Dr. Shishido also recommended that J.K. remain in a highly specialized non-public school setting, where he could receive one-to-one instruction and modification of school work to fit his cognitive levels.

26. In October 2022, AACPS convened an annual IEP meeting where the team developed an IEP which offered 29 hours and 15 minutes per week of special education services, 2 hours per month of Occupational Therapy, and 2 hours per month of counseling, all outside of the general education setting. The team proposed that J.K. remain at the Harbour School.

27. On May 15, 2023, AACPS convened its annual IEP meeting for J.K. At that meeting the parent requested that J.K. be moved from the diploma track onto the Alternative Learning Outcomes ("ALO"), or certificate, track.

28. At the end of the May 2023 IEP meeting, the school team proposed a significant reduction to J.K.'s IEP hours and a change in his placement to Crofton Middle School ("Crofton"), an AACPS public school. Per the proposed IEP at Crofton, J.K. would receive 19 hours per week of specialized instruction outside of the general education setting and 10 hours per week of specialized instruction inside the general education setting. Additionally, the team proposed 30 minutes twice per week of Speech Language therapy, 2 hours per month of counseling, and 2 hours per month of Occupational Therapy.

29. After realizing a change to the ALO track would mean a reduction in J.K.'s IEP hours and a change in placement, his mother determined it was inappropriate and noted that she was not in agreement with the proposal. She requested that he remain at Harbour. She refused to sign consent for Appendix A, which would have placed him on the ALO track.

30. On August 1, 2023, J.K.'s mother filed a Request for Due Process seeking continued placement at Harbour for the 2023-24 school year.

31. The parties reached a settlement agreement on the parent's due process appeal in the fall of 2023 where AACPS agreed to fund J.K.'s placement at Harbour for the 2023-24 school year. His IEP was amended on October 17, 2023 to reflect the same. However, the agreement stated that his "stay put" placement for the 2024-25 school year would be the Alternative Curriculum Class ("ACC"), at Arundel High School ("Arundel"), an ALO program, with the understanding that continued placement at Harbour School would also be considered.

32. On March 15, 2024, Shawn McCoy, J.K.'s Non-Public Teacher Specialist/Case Manager, contacted the parent in order to create a transition plan for ninth grade and offer them a tour of Arundel High School.

33. On his third quarter report card from Harbour in the spring of 2024, J.K. received several "Satisfactory" grades, as well as some "Excellent" marks in his Chemistry of Earth System's class. Regarding his social skills, Harbour staff reported that he had expanded his social relationships with his participation in JV basketball and the cheer and dance team. J.K. was also becoming more independent during his morning and afternoon routines. However, he continued to struggle with accepting answers from staff without multiple repetitions and/or resistance to the initial response given to him. Harbour staff began the use of visuals consistent with staff responses with the hope that this would lessen his behavior. Overall, J.K. was reportedly more socially appropriate with peers during lunch, recess, and other less structured times.

34. In April 2024, J.K.'s therapist at Aspire Wellness Center, Phylicia Baker, provided a letter of recommendation for his school programming for high school. Ms. Baker discussed his ongoing struggles to understand social cues and desire to be part of the group and be liked, which could create safety issues. She also discussed his extremely limited impulse controls that create safety concerns including elopement, making threats, displaying aggression, and other verbal or physical behaviors.

35. Ms. Baker shared her belief that J.K. was appropriately placed in the highly-structured and supported environment at Harbour where he felt confident and cared for, and understood while also being challenged to move beyond his comfort zone.

36.     On April 17, 2024, Dr. Linda Jacobs, the Harbour School Executive Director, shared a letter regarding J.K.'s proposed program for his transition to high school, which had already begun during the course of eighth grade.  The letter indicated that students at Harbour are placed in a hybrid program that provides 0 credit courses which lead to a certificate AND credit-bearing courses, which if taken in sufficient number would lead to a diploma.  J.K.'s program for ninth grade would provide English Literacy and Math Literacy as 0 credit courses, and FACS, Health and Wellness, and Career, Research, and Development, as 1 credit courses.  His Social Studies class could be either 1 credit or 0 credit.  J.K. would also continue to receive two 30-minute sessions of speech/language therapy per week, one 30-minute session of OT per week, and one 30-minute session of counseling per week.  Dr. Jacobs concluded her letter by stating that J.K. had many friends in his peer group at Harbour and has opportunities to play intermural sports, run for student government office, participate in performing arts as a lead performer, as well as join multiple after school clubs because Harbour is his Least Restrictive Environment ("LRE").

37.     In order to assist her with J.K.'s educational programming, his mother also hired Christie Mandeville, an educational consultant, to assist her with decisions related to his transition to high school in early 2024.

38.     On May 8, 2024, Ms. Mandeville observed J.K. in his classroom at Harbour.  She noted that the students were actively engaged in a small group in a well-organized classroom.  At the conclusion of her observation, she reported that J.K. had many strengths, including that he actively engaged in discussion, followed direction with little support, was familiar with classroom routines, and asked for help when needed.

39. Ms. Mandeville also visited the AAC classroom at Arundel High School and was able to make a comparison between the programs. First, she determined that the physical environment at Harbour was more appropriate for J.K. and promoted independence in navigating his learning environment because the building has an open space in the center with multiple staff present which allows the students to move around with adequate supervision. At Arundel, J.K. would be placed in a self-contained classroom within a large public-school building, which would not promote independence in navigating to his classes.

40. Ms. Mandeville also observed that while J.K. was significantly below grade and age level, he has the ability to participate in instruction with more challenging content, as was evident during her observation where she saw his ability to engage in discussion, ask clarifying questions, and be able to understand higher level vocabulary. She noted that the AAC class focused on life skills as part of the Unique Learning System, but was not tailored to the individual needs of all students and did not provide opportunities for higher level discussion. For example, the students in the AAC classroom were cooking and making snacks as a functional skill and no higher order questions were asked during the lesson. The significant support and the level of modification made to the cooking class instruction she observed was not necessary for J.K., and he should be with peers at a more independent level of functioning.

41. In her observation report, Ms. Mandeville formally recommended that J.K. continue to be provided programming in independent living skills and career readiness with functional academic content as well as continue engaging in diploma level classes at his social level. She also noted that J.K. would have the opportunity to participate in classes at the career center with non-diploma track students, as well as join classes with students on the diploma track

program. Ms. Mandeville concluded that J.K. should continue in his appropriate placement at Harbour.

42. On May 9, 2024, AACPS convened an IEP meeting to discuss J.K.'s educational programming. The team discussed Appendix A and the decision of whether to transfer him to the Maryland High School Certificate of Completion Program by enrolling him in the ALO program. The parent, through counsel, reserved her decision and requested that the team meet again to make the final decision. Ms. Mandeville also shared the results of her observations of both J.K.'s program at Harbour and the proposed program at Arundel.

43. On May 16, 2024, J.K.'s mother, through counsel, sent AACPS all the documentation in support of his continued placement at Harbour, including Ms. Baker's recommendation, Dr. Jacobs' letter, Ms. Mandeville's observation report, as well as her own personal statement. She shared her joy that because of Harbour's program, J.K. has, "grown into his true identity" and has built the adaptive and social skills, "which enable him to find himself in all areas." The parent also shared that J.K. had been introduced to a transition plan that had him hopeful and excited to continue to engage in his future at Harbour. She expressly requested that the school system strongly reconsider transferring him out of Harbour to the AAC program at Arundel. Specifically, such a change would traumatize him, cause him to decline psychologically, cause him to regress academically, socially, and adaptively, and would, "strip him from consistency and ask him to try to learn everything that he has learned [again] since 2020."

44. On May 17, 2024, AACPS convened a meeting to finalize J.K.'s IEP and placement for the 2024-25 school year. J.K.'s mother again expressed her strong desire for him to remain at Harbour with the support of Ms. Mandeville. However, the school system

10

determined that J.K.'s placement would be the AAC program at Arundel for the 2024-25 school year.

45. The parent filed a due process hearing request on May 28, 2024 seeking placement and funding at Harbour for the 2024-25 school year.

46. A due process hearing was held virtually on September 4, 10, 11, 12, 18, 19, and October 1, 2024.

47. During the hearing, and after presenting her entire evidentiary case, the parent learned for the first time that prior to the May 2024 IEP meetings held for J.K., AACPS held a pre-meeting that involved Harbour staff that the parent had not been invited to. During that pre-meeting, school system staff and Harbour discussed J.K.'s placement for the 2024-25 school year.

48. On October 31, 2024, the ALJ issued his Decision in favor of AACPS, denying the parents all requested relief.

49. In his Decision, the ALJ denied the parent all relief, finding that AACPS did not deny J.K. a FAPE for the 2024-25 school year.

50. The ALJ improperly found that the school system's pre-meeting without the involvement of the parent was not properly before him for decision, but even if it was, it did not rise to the level of predetermination.

51. The ALJ erroneously found that the May 2024 IEP provided appropriate adult support for J.K. in his proposed AACPS placement.

52. The ALJ incorrectly found that the reduction of special education service hours in the May 2024 IEP did not deny J.K. a FAPE.

53. The ALJ erroneously held that the proposed AACPS program was J.K.'s Least

11

Case 1:25-cv-00483-JRR   Document 1   Filed 02/14/25   Page 12 of 14

Restrictive Environment.

54. The ALJ improperly concluded that AACPS provided a cogent and responsive explanation for J.K.'s proposed IEP and placement.

55. The ALJ incorrectly dismissed the opinions of the parent and her experts and instead relied upon the opinions of the school system witnesses.

56. The ALJ's Decision contains multiple errors of fact and law.

57. The ALJ's findings of fact often are not regularly made.

58. The ALJ applied incorrect legal standards in reaching his Decision.

59. Plaintiffs are aggrieved by the ALJ's decision.

60. Plaintiffs have exhausted their administrative remedies.

## COUNT I

(Failure to provide a Free Appropriate Public Education)

61. Plaintiff incorporate as through restated each of the factual allegations stated in paragraphs 1 through 60.

62. Defendants' failure to provide J.K. with a free appropriate public education violates plaintiffs' rights under the IDEA and Maryland law.

## COUNT II

(Failure to Offer Appropriate Program and Placement)

63. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 60.

64. Defendants' failure to provide J.K. with an appropriate educational placement violates plaintiffs' rights under the IDEA and Maryland law.

## COUNT III

(Failure of the Administrative Law Judge to Render a Proper Decision)

65. Plaintiffs incorporate as though restated each of the factual allegations stated in paragraphs 1 through 60.

66. The ALJ committed error, and violated plaintiffs' due process rights under the IDEA and Maryland law by failing to render a proper decision based on an accurate and impartial understanding of the facts.

67. The ALJ committed error and violated the plaintiffs' due process rights under the IDEA and Maryland law by failing to apply correct legal standards.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1. Issue judgment for plaintiffs and against defendants;

2. Issue declaratory relief that defendants violated plaintiffs' rights under applicable law;

3. Issue injunctive relief, vacating the Decision of the ALJ and ordering defendants to reimburse plaintiffs for tuition expenses and costs incurred in J.K.'s enrollment at Harbour School for the 2024-2025 school year;

4. Order defendants to place and fund J.K. at Harbour and declare it to be his current educational placement under IDEA;

5. Award any other relief that this Court deems just.

Respectfully Submitted,

_____
Michael J. Eig          #07718
Paula A. Rosenstock   #09798
MICHAEL J. EIG AND ASSOCIATES, P.C.
5454 Wisconsin Avenue

Suite 760
Chevy Chase, Maryland 20815
(301) 657-1740
Counsel for Plaintiffs